ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Honeywell International, Inc. | ) | ASBCA No. 63286 |
| | ) | |
| Under Contract No. FA8576-20-C-0001 | ) | |

APPEARANCES FOR THE APPELLANT:      Thomas A. Lemmer, Esq.
       Jessica R. Chao, Esq.
         Dentons US LLP
         Denver, CO

       Gale R. Monahan, Esq.
         Dentons US LLP
         Dallas, TX

APPEARANCES FOR THE GOVERNMENT:      Samuel W. Morris, Esq.
         DCMA Chief Trial Attorney
       Peter M. Casey, Esq.
       Debra E. Berg, Esq.
         Trial Attorneys
         Defense Contract Management Agency
         Hanscom AFB MA

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL ON
APPELLANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Appellant, Honeywell International, Inc. (Honeywell), has moved for judgment on the pleadings to sustain its appeal, contending that the government has failed to state a claim upon which relief can be granted. The Board denies the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The following facts are undisputed for purposes of the motion, unless noted otherwise.

1. Honeywell has been performing government contracts subject to the Cost Accounting Standards (CAS) since the 1980s (R4, tab 27). During this period, a Honeywell segment, Sensor & Guidance Products (SGP), manufactured ring laser gyros at a Minneapolis, MN, facility that it incorporated in products for government contracts. SGP also manufactured gyros that it transferred to another Honeywell

segment located in Coons Rapids, MN, which incorporated them in products for commercial customers. (Compl. ¶¶ 13-16)  Honeywell refers to these as interorganizational transfers (compl. ¶ 16).  During this period, SGP submitted disclosure statements to the government stating that it used a total cost input base (mot. at 2).

2.  On April 18, 2022, Jerry Clark, a Defense Contract Management Agency (DCMA) divisional administrative contracting officer (DACO) issued a government claim for $151,139,355, which consisted of a principal debt amount of $56,180,190, plus interest (R4, tab 27 at 4[1]).  The DACO used a start date of January 1, 1980, for this calculation (*id.* at 3).

3.  The crux of the government's claim is that it paid more than its fair share of SGP's general and administrative (G&A) expenses.  The parties agree that when SGP transferred the gyros to Coons Rapids, SGP transferred the associated labor, materials and overhead costs from its allocation base at SGP to Coons Rapids (mot. at 2; R4, tab 27 at 2).  But all G&A costs of SGP remained with SGP.  In simple math terms, after transfer of the gyro costs to Coons Rapids, the numerator (the G&A expenses) in the formula for calculating the G&A rate remained the same, but the denominator (the cost input base) was smaller.  This resulted in a higher G&A rate being applied to government contracts.  According to the DACO, this was a violation of CAS 410-40(b)(1), 410-50(d) and 410-50(f), as well as SGP's disclosed practice of using a total cost input base.  (R4, tab 27 at 1-3; *see* 48 CFR 9904.410)

4.  The DACO relied upon a rough order of magnitude prepared by the Defense Contract Audit Agency (DCAA) to determine how much the higher G & A rate affected government contract costs (R4, tab 27 at 2).  According to DCAA's calculations, the gyro costs removed from the base were more than $13 million in 1980 and increased until they surpassed $65 million in 2019, or more than 10% of the base in some years.  DCAA calculated the annual impact at about $500,000 in 1980, which increased over time and in some of the later years exceeded $3 million.  (R4, tab 26)  Based upon this calculation, the DACO issued the government's April 18, 2022 claim.

5.  Honeywell filed a timely appeal on May 16, 2022.

---

[1] Rule 4 citations are to the .pdf page number except for Rule 4 tab 6, where we use the Bates number for clarity.

DECISION

I.     Standard of Review

FED. R. CIV. P. 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  The Board has considered Rule 12(c) motions even though our Rules do not specifically provide for such a motion.  In appeals where the government is the claimant, but the appellant has filed the complaint per the Board's standard procedures (Board Rule 6(a)), we examine the CO's final decision and the government's answer.  *Club Car, Inc.*, ASBCA No. 61710, 20-1 BCA ¶ 37,493 at 182,162.  The Board accepts as true the allegations in the claim and construes the facts in the light most favorable to the government as the nonmoving party.  *Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1364 (Fed. Cir. 2020).  The Rule 12(c) analysis is functionally identical to the standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1378 (Fed. Cir. 2019).

II.    CAS 410

The purpose of CAS 410 - Allocation of Business Unit General and Administrative Expenses to Final Cost Objectives – is "[t]o provide criteria for the allocation of business unit [G&A] expenses to business unit final cost objectives based on their beneficial or causal relationship."  CAS 410-20.  G&A expenses "represent the cost of the management and administration of the business unit as a whole."  *Id.* The government has made a plausible contention that there is no difference in the beneficial or causal relationship between the G&A expenses and the gyros made for the government on the one hand, and those made for the commercial sector on the other (gov't opp'n at 9, 19; sur-reply at 2-3).

CAS 410 contains the following definitions relevant to this motion:

> (3)  Cost input means the cost, except G&A expenses, which for contract costing purposes is allocable to the production of goods and services during a cost accounting period.

> (4)  Cost objective means a function, organizational subdivision, contract or other work unit for which cost data are desired and for which provision is made to accumulate and measure the cost of processes, products, jobs, capitalized projects, etc.

(5) Final cost objective means a cost objective which has allocated to it both direct and indirect costs, and, in the contractor's accumulation systems, is one of the final accumulation points.

CAS 410-30(a).

CAS 410-40(a) provides that the G&A expenses of a business unit (or segment) must be grouped in a separate indirect cost pool "which shall be allocated only to final cost objectives." Generally, this G&A expense pool is to be allocated to final cost objectives "by means of a cost input base representing the total activity of the business unit . . ." CAS 410-40(b)(1).

The contractor has three choices for a cost input base. Honeywell selected the total cost input base. (SOF ¶ 1; CAS 410-50(d)(1)). Cost input is defined in the standard, but total cost input is not. We will rely on the common meaning of the word "total" to complete the definition. When used as an adjective, total can mean "comprising the whole number or amount: *a total cost of $4,000*" or "complete, absolute . . . ." New Oxford American Dictionary (3rd ed. 2010) (emphasis in original).

As stated above, under CAS 410-30(a)(3), cost input means the cost, except G&A, allocable to the production of goods and services. While redundant, adding the word "total" to "cost input" emphasizes that this base includes *all* costs, except G&A. It also distinguishes it from the other two cost input bases, which use something less than total cost.[2] For present purposes, the Board holds that the government has adequately alleged that when Honeywell transferred the gyro costs to Coons Rapids, the SGP base no longer met the definition of a total cost input base because it no longer included all costs except G&A allocable to the production of goods and services at SGP.

CAS 410-50(d) provides that the base selected by the contractor must "include all significant elements of that cost input which represent the total activity of the business unit." Taking 2019 as an example, the appeal asks the question of whether SGP's cost input base included all significant elements of cost input and represented the total activity of the SGP segment when it subtracted from the base more than $65 million in labor, materials, etc., to manufacture gyros. The government has made a plausible allegation that the base no longer included all significant elements of cost input and no longer represented the total activity of the segment after these costs were removed.

---

[2] For example, a "value-added cost input base" subtracts material and subcontract costs from the total cost. CAS 410-50(d)(2).

4

Finally, the CAS Board addressed this issue in two preambles. *See Allegheny Teledyne, Inc. v. United States*, 316 F.3d 1366, 1374 (Fed. Cir. 2003) (relying on the preamble to CAS 413 to determine the CAS Board's intended meaning). In the preamble to CAS 410, the CAS Board responded to commentators who questioned whether intersegment transfers like those made by Honeywell should be included in the cost input base for allocation of G&A. In response, the Board stated: "where a total cost input base has been selected, all significant costs other than the costs included in the G&A expense pool should be included in the base." 41 Fed. Reg. 16,135, 16,136-37 (Apr. 16, 1976) (emphasis added).

Three years later, the CAS Board addressed another question about one segment of an organization performing work for another when it issued the preamble to CAS 420, Accounting for Independent Research and Development Costs and Bid and Proposal Costs. The Board stated: "[t]he Board believes that if work is performed at a segment and sold to or transferred to another segment directly, it should be considered a final cost objective of the performing segment. Allocating G&A expenses to such work would be consistent with CAS 410 . . . ." 44 Fed. Reg. 55,123, 55,125 (Sep. 25, 1979).

Based on these clear statements by the CAS Board, we hold that the government has made a plausible allegation that the gyro costs are significant costs that should have been included in the base of SGP as the performing segment.

III.    Honeywell's Contentions

Honeywell contends that CAS 410 grants it the discretion to send the gyro costs to Coons Rapids. It cites CAS 410-20, which provides that the "purpose of this Cost Accounting Standard is to provide criteria for the allocation of business unit [G&A] expenses to business unit final cost objectives" and CAS 410-40(a), which provides that "[b]usiness unit G&A expenses shall be grouped in a separate indirect cost pool which shall be allocated only to final cost objectives." (Mot. at 5 (emphasis by app.)) Honeywell has classified the gyro costs as intermediate cost objectives (a product/service center), rather than final cost objectives, which, it contends, relieves it of the obligation to allocate G&A to these costs (mot. at 10-11; compl. ¶ 17).

Honeywell also cites the CAS 410-30(a)(3) definition of cost input, which defines cost input as the cost, except for G&A "allocable to the production of goods and services . . . ." Honeywell contends that because CAS 410 does not define when a cost is allocable to the production of goods and services, then the contractor has "reasonable discretion" to allocate the costs to intermediate cost objectives. Honeywell also cites language from the CAS 410 preamble that allows contractors to make "minor variations from the specific bases . . . " (Mot. at 7-8 (citing 41 Fed. Reg.

16,135, 16137)).

As the government observes, CAS 410 does not even mention interorganizational transfers. Thus, Honeywell reads a lot into the standard. Even if we agreed that CAS 410 provides the contractor with discretion, the Board cannot decide based on the pleadings whether Honeywell acted with "reasonable discretion." What Honeywell did here – manufacturing products for commercial customers in a factory where the government pays the G&A expenses – could so easily be abused that it would almost always be subject to challenge from the CO and review by the Board.

The government has made convincing arguments that the contractor's discretion is not as broad as Honeywell contends. Certainly, Honeywell had discretion in choosing which of the three cost input bases it would use. But once it selected the total cost input base it was hemmed in by the language specifying what goes into that base discussed above: "all significant elements," "total cost," and "total activity."

Moreover, there is a factual dispute as to whether the cost objectives are intermediate as Honeywell contends. Based on the definition quoted above, there are two elements of a final cost objective: 1) direct and indirect costs are allocated to it; and 2) it is one of the final accumulation points in the contractor's accumulation systems. CAS 410-30(a)(5). Honeywell agrees that the costs transferred to Coons Rapids includes both direct costs and overhead (SOF ¶ 3), so only the second of these two prongs appears to be at issue. The DACO relied upon and cited an audit report where DCAA concluded that the gyro line is a final accumulation point in SGP's system, which would make it a final cost objective (R4, tab 27 at 2 (citing R4, tab 10 at 20 (July 16, 2019 DCAA Audit Report No. 7831-2017P19410001). We need not decide now whether DCAA is correct. This is a factual dispute that cannot be resolved on a Rule 12(c) motion.

Finally, Honeywell relies upon language in the CAS 410 preamble that states:

> Commentators suggested that minor variations from the specific bases presented should be allowed. The Board points out that the Standard requires that the allocation base selected should include all significant elements of cost input necessary to represent the total activity. If in a given circumstance, the exclusion of a particular item does not invalidate the chosen base's representation of total activity, this is acceptable under the Standard. The Board notes that these are the kinds of decisions which involve consideration of the individual circumstances of a business unit; accordingly, the Standard provides the opportunity for the exercise of judgment in these situations.

6

41 Fed. Reg. at 16,137. Honeywell reads this as supporting its discretion to decide what is a final cost objective and when it may exclude costs from the base (mot. at 8).

The words "minor variations" in the first sentence of the quoted language and the phrase "should include all significant elements of cost input necessary to represent the total activity" in the second sentence undercut Honeywell's assertion that it possesses wide discretion. Based on the dollar amounts involved and cited above, the Board cannot agree for purposes of this motion that the variations were minor or that the base included all significant elements of cost input.

CAS Board Disclosure Form DS-1

Honeywell also finds support for its practice in Form CASB DS-1, the Cost Accounting Standards Disclosure Statement. Specifically, Honeywell points to Item No. 4.5.0 in this form: Application of Overhead and G&A Rates to Specified Transactions or Costs. This item lists five "rate codes," including "full rate" and "no overhead or G&A rate is applied." The form lists the five rate codes as A, B, C, D and Z. It then lists nine transaction types for which the contractor is to enter one of the five codes. One of those transaction types is "interorganizational transfers out." (R4, tab 6 at G-285) Honeywell's argument is that because a contractor could enter the code for "no overhead or G&A rate is applied" next to "interorganizational transfers out," the CAS Board implicitly permitted Honeywell's actions here (mot. at 9).

The Board holds that without some other supporting evidence, one item in a lengthy form demonstrates very little. The form seems to address whether the full rate or some other rate (higher or lower than full rate) will be applied, not how the full rate will be calculated in the first instance. We are not willing to make the leap that, because the contractor could insert the code for "no overhead or G&A rate is applied" next to "interorganizational transfers out," the CAS Board essentially endorsed Honeywell's practice here. The clear statements by the CAS Board in CAS 410 and in the preambles discussed above contradict the conclusions that Honeywell draws from Item 4.5.0 in Form CASB DS-1.

7

<u>CONCLUSION</u>

The government has stated a claim upon which relief may be granted. Appellant's motion to dismiss is denied.

Dated:  June 7, 2023

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63286, Appeal of Honeywell International, Inc., rendered in conformance with the Board's Charter.

Dated:  June 8, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8